**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI**

**RANDIE N. PETERS**

**Plaintiff,**

**v.**

**MANCHESTER OPERATOR LLC**
Serve:
FILE RIGHT RA SERVICES INC.
4607 Shrewsbury Ave Ste E
Saint Louis, MO 63119-2817

**DEF HOLDINGS LLC**
Serve:
The Corporation Trust Company
Corporation Trust Center, 1209 Orange Street
Wilmington, DE 19801

**AMA HOLDINGS LLC**
Serve:
The Corporation Trust Company
Corporation Trust Center, 1209 Orange Street
Wilmington, DE 19801

**ASHER MARX**
Serve:
1809 New Hampshire Ave
Toms River, NJ 08755-1313

**JACQUES WOLF**
Serve:
10 Grandview Dr
Lakewood, NJ 08701-3881

**Defendants.**

**Case No. Case No.**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

The Plaintiff, by and through undersigned counsel, submits this Complaint for

Damages against the above-named Defendants, and in further support, states and

alleges as follows:

**PLAINTIFF**

1. Randie N. Peters ("Resident") suffered an avoidable infection on or about

December 15, 2023, at MANCHESTER OPERATOR LLC.

1

2. Plaintiff Randie N. Peters ("Resident") has been an adult over the age of 21 and is a citizen of Missouri.

3. Plaintiff Randie N. Peters brings this action for damages resulting from the negligent care provided by Defendants while Plaintiff was a resident at MANCHESTER OPERATOR LLC.

## DEFENDANTS

4. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

## MANCHESTER OPERATOR LLC

5. At all times relevant, MANCHESTER OPERATOR LLC was a Missouri limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, and did business as Manchester Rehab and Healthcare Center.

6. As such, MANCHESTER OPERATOR LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling MANCHESTER OPERATOR LLC.

7. Consequently, MANCHESTER OPERATOR LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at MANCHESTER OPERATOR LLC.

8. The sole shareholders of MANCHESTER OPERATOR LLC are Asher Marx and Jacques Wolf.

9. Asher Marx and Jacques Wolf are citizens of New Jersey.

10. Thus, MANCHESTER OPERATOR LLC is a citizen of New Jersey.

**DEF HOLDINGS LLC**

11.   At all times relevant, DEF HOLDINGS LLC was a Delaware limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, MANCHESTER OPERATOR LLC.

12.   As such, DEF HOLDINGS LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling MANCHESTER OPERATOR LLC.

13.   Consequently, DEF HOLDINGS LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at MANCHESTER OPERATOR LLC.

14.   DEF HOLDINGS LLC and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled MANCHESTER OPERATOR LLC by exercising final authority over: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of MANCHESTER OPERATOR LLC leadership.

15.   DEF HOLDINGS LLC and/or individuals or entities acting on its behalf, operated, managed, maintained, and exercised final authority over MANCHESTER OPERATOR LLC of: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of MANCHESTER OPERATOR LLC leadership.

16.   It was DEF HOLDINGS LLC's intention to cut operating expenses at MANCHESTER OPERATOR LLC through cutting of labor expenses while increasing revenue through increased census.

17. These actions and business decisions had a direct impact on the care provided to all residents including Resident.

18. Consequently, DEF HOLDINGS LLC owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at MANCHESTER OPERATOR LLC and breached said duty for all the reasons stated in this Petition.

19. The sole shareholders of DEF HOLDINGS LLC are Asher Marx and Jacques Wolf.

20. Asher Marx and Jacques Wolf are citizens of New Jersey.

21. Thus, DEF HOLDINGS LLC is a citizen of New Jersey.

## AMA HOLDINGS LLC

22. At all times relevant, AMA HOLDINGS LLC was a Delaware limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, MANCHESTER OPERATOR LLC.

23. As such, AMA HOLDINGS LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling MANCHESTER OPERATOR LLC.

24. Consequently, AMA HOLDINGS LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at MANCHESTER OPERATOR LLC.

4

25. AMA HOLDINGS LLC and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled MANCHESTER OPERATOR LLC by exercising final authority over: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of MANCHESTER OPERATOR LLC leadership.

26. AMA HOLDINGS LLC and/or individuals or entities acting on its behalf, operated, managed, maintained, and exercised final authority over MANCHESTER OPERATOR LLC of: (1) Staffing budgets; (2) The development and implementation of nursing policies and procedures; (3) The hiring and firing of MANCHESTER OPERATOR LLC leadership.

27. It was AMA HOLDINGS LLC's intention to cut operating expenses at MANCHESTER OPERATOR LLC through cutting of labor expenses while increasing revenue through increased census.

28. These actions and business decisions had a direct impact on the care provided to all residents including Resident.

29. Consequently, AMA HOLDINGS LLC owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at MANCHESTER OPERATOR LLC and breached said duty for all the reasons stated in this Petition.

30. The sole shareholders of AMA HOLDINGS LLC are Asher Marx and Jacques Wolf.

31. Asher Marx and Jacques Wolf are citizens of New Jersey.

32. Thus, AMA HOLDINGS LLC is a citizen of New Jersey.

**ASHER MARX**

33. At all times relevant, ASHER MARX was an individual and citizen of New Jersey.

34. ASHER MARX is the sole shareholder of each of the corporate defendants and personally controlled, directed, and managed the operations of MANCHESTER OPERATOR LLC.

35. ASHER MARX used the corporate defendants as mere instrumentalities to conduct business and to avoid personal liability.

36. Consequently, ASHER MARX owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at MANCHESTER OPERATOR LLC.

**JACQUES WOLF**

37. At all times relevant, JACQUES WOLF was an individual and citizen of New Jersey.

38. JACQUES WOLF is the sole shareholder of each of the corporate defendants and personally controlled, directed, and managed the operations of MANCHESTER OPERATOR LLC.

39. JACQUES WOLF used the corporate defendants as mere instrumentalities to conduct business and to avoid personal liability.

40. Consequently, JACQUES WOLF owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at MANCHESTER OPERATOR LLC.

**DEFENDANTS' JOINT ENTERPRISE/VENTURE**

41. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

6

42. Defendants MANCHESTER OPERATOR LLC; DEF HOLDINGS LLC; AMA HOLDINGS LLC; ASHER MARX; and JACQUES WOLF ("Joint Venture Defendants") were engaged in a joint venture in that:

  a. The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate MANCHESTER OPERATOR LLC, a Missouri licensed skilled nursing facility;

  b. The Joint Venture Defendants had had a common purpose to operate MANCHESTER OPERATOR LLC, a Missouri licensed skilled nursing facility;

  c. The Joint Venture Defendants had a community of pecuniary interest in the operation of MANCHESTER OPERATOR LLC, a Missouri licensed skilled nursing facility; and

  d. The Joint Venture Defendants had had an equal right to a voice in the direction of the operation of MANCHESTER OPERATOR LLC, a Missouri licensed skilled nursing facility.

  e. There has been always a close relationship between the Joint Venture Defendants relevant.

43. Because of the joint venture, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for their safety while under their care and supervision at MANCHESTER OPERATOR LLC.

## JURISDICTION AND VENUE

44. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

45. As alleged above, each defendant is a citizen of New Jersey. Thus, each defendant is a citizen of New Jersey.

46. Plaintiff is a citizen of Missouri.

47. Therefore, Plaintiff brings these claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

7

48. Pursuant to RSMo § 506.500, defendants purposefully availed themselves of the protections and/or benefits of the laws in Missouri by entering into contracts with entities in Missouri that then permitted them to commit tortious acts within the state including, but not limited to, failing to ensure that MANCHESTER OPERATOR LLC had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

49. A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in Missouri, thereby making venue proper in this Court.

**AGENCY**

50. The acts hereinafter described were performed by the agents, representatives, servants, and employees of Defendants and were performed either with the full knowledge and consent of Defendants, and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the Defendants.

51. Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of Defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Resident.

**FACTUAL BACKGROUND**

52. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

8

**<u>Defendants' Treatment of Resident</u>**

53. Resident was admitted to MANCHESTER OPERATOR LLC for skilled nursing care.

54. Resident was at risk for suffering infections.

55. Upon information and belief, despite Resident's risk for infections, none of MANCHESTER OPERATOR LLC staff created a Care Plan for resident that implemented the appropriate interventions.

56. Upon information and belief, none of MANCHESTER OPERATOR LLC staff implemented or applied the appropriate interventions to address Resident's risk for infections.

57. Upon information and belief, from admission to his discharge, none of MANCHESTER OPERATOR LLC staff:

    a. Properly assessed Resident's risk of infections;

    b. Implemented or provided the appropriate interventions to prevent Resident from developing infections, including proper infection control protocols;

    c. Monitored or evaluated Resident's Care Plan to see if the interventions prescribed were working; or

    d. Monitored Resident's condition, including signs and symptoms of infection during this time frame.

58. Upon information and belief, at no point while Resident was a resident at MANCHESTER OPERATOR LLC did any of MANCHESTER OPERATOR LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from defendants, or any other staff member ever provide any sort of in-service training or clinical education to MANCHESTER OPERATOR LLC staff regarding the assessment, prevention, use of interventions, monitoring, and reporting of infections in residents like Resident.

59. Upon information and belief, at no point while Resident was a resident at MANCHESTER OPERATOR LLC did any of MANCHESTER OPERATOR LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from defendants, or any other staff member ever implement the appropriate policies and procedures at MANCHESTER OPERATOR LLC regarding the assessment, prevention, use of interventions, monitoring, and reporting of infections in residents like Resident.

60. Upon information and belief, while Resident was a resident at MANCHESTER OPERATOR LLC, MANCHESTER OPERATOR LLC did not have an adequate number of staff working daily at MANCHESTER OPERATOR LLC to meet Resident's needs, perform the interventions required to prevent Resident's an avoidable infection, or monitor and adequately supervise Resident's condition.

**Undercapitalization/Underfunding at MANCHESTER OPERATOR LLC**

61. DEF HOLDINGS LLC; AMA HOLDINGS LLC; ASHER MARX; JACQUES WOLF; and MANCHESTER OPERATOR LLC had a duty to provide financial resources and support to MANCHESTER OPERATOR LLC in a manner that would ensure that each of their residents received the necessary care and services and attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with their residents' comprehensive assessments and plans of care.

62. DEF HOLDINGS LLC; AMA HOLDINGS LLC; ASHER MARX; JACQUES WOLF; and MANCHESTER OPERATOR LLC had a duty to provide sufficient financial resources to ensure there was enough properly trained and supervised staff to meet the needs of their residents.

63. Upon information and belief, MANCHESTER OPERATOR LLC had no autonomy to decide their own financial course, including no authority to determine how much staff they could provide or what resources were available to the staff.

64. Upon information and belief, no individuals at MANCHESTER OPERATOR LLC are involved in decision making about the financial operations or what its resources were and where they would be spent.

65. Transactions directed by DEF HOLDINGS LLC and AMA HOLDINGS LLC and ASHER MARX and JACQUES WOLF left MANCHESTER OPERATOR LLC with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their facility during Resident's time there.

## LEGAL BASIS FOR DEF HOLDINGS LLC's LIABILITY

### Joint Venture/Enterprise

66. DEF HOLDINGS LLC is referred to herein as the "Corporate Defendant."

67. The Corporate Defendant directed, operated, and managed the day-to-day functions of their skilled nursing facilities -- including MANCHESTER OPERATOR LLC -- by developing and implementing policies, practices and procedures affecting all facets of MANCHESTER OPERATOR LLC, including resident care.

68. These policies manipulate and control the physical and financial resources and prohibit decision making at MANCHESTER OPERATOR LLC level.

69. This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and most importantly, how much staff is available to provide resident care and how well trained and supervised are the staff to meet the needs of the residents.

70. The Corporate Defendant affirmatively chose and decided to establish such operations and demand they be implemented.

71. Upon information and belief, such operations included the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients to increase the patient census when Defendants had already chosen to understaff MANCHESTER OPERATOR LLC and continually maintain a staff that were not qualified nor competent to provide the care required by state law, regulations and minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualification and care capability of MANCHESTER OPERATOR LLC's staff.

72. The Corporate Defendant consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

73. The Corporate Defendant conducted itself in a manner which indicates a joint venture/enterprise:

    a. The shared interest in the operation and management of skilled nursing facilities;

    b. The express and implied agreements amongst them to share in the profits and losses of such venture/enterprise; and

12

c. The obvious actions taken showing the cooperation in furthering the venture/enterprise operating and managing skilled nursing facilities.

74. Missouri law recognizes a joint venture/enterprise where the parties alleged to be partners in such venture/enterprise share a common interest in the property or activity or the joint venture; maintain agreements, either express or implied, to share in profits or losses of the venture/enterprise; and express actions or conduct showing cooperation in the project of the venture/enterprise.

75. The Corporate Defendant and MANCHESTER OPERATOR LLC maintain agreements to share in the profits or losses of the operation of skilled nursing facilities described herein; and operate daily evincing conduct which indicates their cooperation in the venture of operating and managing skilled nursing facilities for profit.

76. The Corporate Defendant and MANCHESTER OPERATOR LLC took direct, overt, and specific actions to further the interest of the joint enterprise.

77. These actions were taken through a joint venture/enterprise or through the Corporate Defendant and MANCHESTER OPERATOR LLC's officers, directors, managers and or employees.

78. The Corporate Defendant had an equal right to share in the profits and to bear liability for, the joint venture/enterprise.

79. Further, because the Corporate Defendant and MANCHESTER OPERATOR LLC were dominated by each other, these entities had an equal right to direct or control their venture, as well as to direct or control the operation and management of MANCHESTER OPERATOR LLC.

**Direct Participation/Individual Actions**

80. The Corporate Defendant was always material to this lawsuit in the business of managing, owning, and operating a network of skilled nursing facilities throughout the Missouri and the country. One such skilled nursing facilities was MANCHESTER OPERATOR LLC where Resident was admitted for care and treatment.

81. At all times material to this lawsuit, the Corporate Defendant was fully aware that the delivery of essential care services in each of their skilled nursing facilities -- including MANCHESTER OPERATOR LLC -- hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the skilled nursing facilities; and, (3) payor mix.

82. At all times material, the Corporate Defendant made critical operational decisions and choices which manipulated and directly impacted MANCHESTER OPERATOR LLC's revenues and expenditures. More particularly, the Corporate Defendant determined:

   a. The number of staff allowed to work in their chains of skilled nursing facilities including MANCHESTER OPERATOR LLC;

   b. The expenditures for staffing at the skilled nursing facilities including MANCHESTER OPERATOR LLC;

   c. The revenue targets for each skilled nursing facilities including MANCHESTER OPERATOR LLC;

   d. The payor mix, and census targets for each skilled nursing facilities including MANCHESTER OPERATOR LLC;

   e. Patient recruitment programs and discharge practices at each skilled nursing facilities including MANCHESTER OPERATOR LLC.

83. All cash management functions, revenues and expenditure decisions at the skilled nursing facilities level -- including MANCHESTER OPERATOR LLC -- were tightly managed, directed, and supervised by the Corporate Defendant.

84. It was the choices made by the Corporate Defendant which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes, including MANCHESTER OPERATOR LLC.

85. The Corporate Defendant formulated, established and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix.

86. The census edicts, marketing and admission practices, and resident discharge policies designed and mandated by the Corporate Defendant was implemented and such application was carefully supervised and enforced.

87. Following the mandates, MANCHESTER OPERATOR LLC functioned in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporate Defendant deemed appropriate.

88. Accordingly, such manipulation by the Corporate Defendant as to staffing and census were motivated by the financial needs of the Corporate Defendant and MANCHESTER OPERATOR LLC as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

89. Instead of abiding by their duty to care for the residents, the Corporate Defendant chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

15

90. The Corporate Defendant, therefore, directly participated in a continuing course of negligent conduct, requiring MANCHESTER OPERATOR LLCto recruit and retain heavier care, higher pay residents to MANCHESTER OPERATOR LLC even though the needs of the patient population far exceeded the capacity of staff.

91. At the same time, the Corporate Defendant chose to design, create, implement, and enforce operational budgets at MANCHESTER OPERATOR LLC which dictated the level of care that could be provided and therefore deprived residents care, creating widespread neglect.

92. In so doing, the Corporate Defendant disregarded, superseded, and violated the duties and responsibilities imposed on a licensed skilled nursing facility, in this case MANCHESTER OPERATOR LLC, by the State of Missouri.

### Corporate Malfeasance

93. The Corporate Defendant consciously chose not to implement safety policies, procedures and systems which would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

94. Accordingly, the Corporate Defendant, by their operational choices and decision making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

95. These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures disregarded the duties which the State of Missouri and federal government imposed upon the Corporate Defendant and MANCHESTER OPERATOR LLC.

96. Because the staffs were below necessary levels, and because the staffs that were present were not properly qualified or trained, the residents at MANCHESTER OPERATOR LLC including Resident, failed to receive even the most basic care required to prevent catastrophic injury and death. This negligence and resulting injuries ultimately led to and caused Resident's injuries and death as described above.

97. During Resident's residency at MANCHESTER OPERATOR LLC, Resident sustained physical injuries and died, as described in more detail above, because of the acts, omissions, decisions, and choices made by the Corporate Defendant in operating MANCHESTER OPERATOR LLC.

98. During Resident's residency at MANCHESTER OPERATOR LLC, the Corporate Defendant negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Resident with a clean, safe, and protective environment, and that, because of this failure, Resident suffered neglect, abuse, severe personal injuries, conscious pain and suffering, and deterioration of Resident's physical condition as further described above. Ultimately, Resident died because of this failure.

99. The Corporate Defendant manages, operates, and directs the day-to-day operations of MANCHESTER OPERATOR LLC and the Corporate Defendant is liable for this direct involvement in the operations of such Facility. The Corporate Defendant is therefore liable to the Plaintiff for the neglect of and injuries to Resident.

100. MANCHESTER OPERATOR LLC and thee Corporate Defendant have been named as Defendants in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

   a. Chosen to disregard the duties and responsibilities which MANCHESTER OPERATOR LLC, as a licensed skilled nursing facility, owed to the State of Missouri and its residents;

   b. Created the dangerous conditions described by interfering with and causing MANCHESTER OPERATOR LLC to violate Missouri statutes, laws and minimum regulations governing the operation of said skilled nursing facilities;

   c. Superseding the statutory rights and duties owed to skilled nursing facilities residents by designing and mandating dangerous directives, policies, management, and day to day operation of MANCHESTER OPERATOR LLC;

   d. Caused the harm complained of herein; and

   e. Choosing to disregard the contractual obligations owed to the State of Missouri and the Federal Government to properly care for the residents in exchange for payment of funds for such care.

### Count I - (Negligence Against All Defendants)

101. At all times material hereto Resident was in a defenseless and dependent condition.

102. As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care, and treatment.

103. At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

104. At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing Facility.

105. These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

106. These duties required Defendants to have sufficient and qualified staff at MANCHESTER OPERATOR LLC skilled nursing facilities to ensure the proper care for, and treatment of all residents including Resident.

107. These duties required Defendants to ensure that MANCHESTER OPERATOR LLC's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

108. These duties required Defendants to ensure that MANCHESTER OPERATOR LLC was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

109. Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

   a. Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition;

   b. Failing to adequately assess Resident's risk of infections;

   c. Failing to implement proper infection control protocols;

   d. Failing to maintain proper hand hygiene practices;

   e. Failing to recognize early signs and symptoms of infection and sepsis;

    f.   Failing to obtain timely cultures when infection was suspected;

    g.   Failing to administer prescribed antibiotics in a timely manner;

    h.   Failing to implement appropriate isolation precautions when indicated;

    i.   Failing to enact and carry out an adequate Care Plan regarding Resident's increased risk for infections;

110. As a direct and proximate result of the individual and collective acts of negligence of Defendants as described above, Resident was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; and other damages.

111. As a direct and proximate result of the individual and collective acts of negligence of all Defendants as described above, Plaintiff suffered economic damages including past and future medical expenses, past and future lost wages, and other economic damages.

WHEREFORE, Plaintiff Randie N. Peters prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past and future medical expenses.

## Count II - (Alter Ego Against ASHER MARX)

112. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

113. MANCHESTER OPERATOR LLC ("Subsidiary") is so dominated by ASHER MARX that the Subsidiary is a mere instrument of ASHER MARX and is indistinct from ASHER MARX.

114. In fact, the Subsidiary is controlled and influenced by ASHER MARX in that ASHER MARX exercised complete control and domination over the Subsidiary finances and business practices.

20

115. Specifically, ASHER MARX complete control and domination over the Subsidiary caused the Facility's undercapitalization and understaffing while Resident was at the Facility.

116. ASHER MARX's complete control and domination over the Subsidiary caused the Subsidiary to operate at a loss during the two years preceding the negligence in this case.

117. ASHER MARX's complete control and domination over the Subsidiary caused the Subsidiary's liabilities to exceed its assets during the two years preceding the negligence in this case.

118. Specifically: (1) ASHER MARX own all or most of the capital stock of the Subsidiary; (2) ASHER MARX and the Subsidiary have common directors or officers; (3) ASHER MARX finance the Subsidiary; (4) ASHER MARX subscribe to all of the capital stock of the Subsidiary; (5) ASHER MARX caused the incorporation of the Subsidiary; (6) The Facility has grossly inadequate capital; (7) ASHER MARX pays the salaries and other expenses or losses of the Subsidiary; (8) ASHER MARX use the property of the Subsidiary as its own; and (9) The directors or executives of the Subsidiary do not act independently in the interest of the Subsidiary but take their orders from ASHER MARX in the latter's interest.

119. Thus, ASHER MARX used the corporate cloak of the Subsidiary as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud in that ASHER MARX's complete control and domination of the Subsidiary depleted all the Subsidiary's assets, thereby making it unable to pay a judgment resulting from its care of residents including Resident.

21

120. This undercapitalization and understaffing violated MANCHESTER OPERATOR LLC's duties and the applicable standard of care owed by a skilled nursing facilities operator or manager to the Facility's residents.

121. As a direct and proximate result of the individual and collective acts of negligence of the Subsidiary -- and ASHER MARX -- Resident was harmed and suffered non-economic damages including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life, death, and other damages.

122. As a direct and proximate result of the individual and collective acts of negligence of the Subsidiary, -- and ASHER MARX -- Plaintiff, suffered damages including loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement, conscious pain and suffering; and mental anguish.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past medical expenses.

## Count III - (Alter Ego Against JACQUES WOLF)

123. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

124. MANCHESTER OPERATOR LLC ("Subsidiary") is so dominated by JACQUES WOLF that the Subsidiary is a mere instrument of JACQUES WOLF and is indistinct from JACQUES WOLF.

125. In fact, the Subsidiary is controlled and influenced by JACQUES WOLF in that JACQUES WOLF exercised complete control and domination over the Subsidiary finances and business practices.

22

126. Specifically, JACQUES WOLF complete control and domination over the Subsidiary caused the Facility's undercapitalization and understaffing while Resident was at the Facility.

127. JACQUES WOLF's complete control and domination over the Subsidiary caused the Subsidiary to operate at a loss during the two years preceding the negligence in this case.

128. JACQUES WOLF's complete control and domination over the Subsidiary caused the Subsidiary's liabilities to exceed its assets during the two years preceding the negligence in this case.

129. Specifically: (1) JACQUES WOLF own all or most of the capital stock of the Subsidiary; (2) JACQUES WOLF and the Subsidiary have common directors or officers; (3) JACQUES WOLF finance the Subsidiary; (4) JACQUES WOLF subscribe to all of the capital stock of the Subsidiary; (5) JACQUES WOLF caused the incorporation of the Subsidiary; (6) The Facility has grossly inadequate capital; (7) JACQUES WOLF pays the salaries and other expenses or losses of the Subsidiary; (8) JACQUES WOLF use the property of the Subsidiary as its own; and (9) The directors or executives of the Subsidiary do not act independently in the interest of the Subsidiary but take their orders from JACQUES WOLF in the latter's interest.

130. Thus, JACQUES WOLF used the corporate cloak of the Subsidiary as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud in that JACQUES WOLF's complete control and domination of the Subsidiary depleted all the Subsidiary's assets, thereby making it unable to pay a judgment resulting from its care of residents including Resident.

23

131. This undercapitalization and understaffing violated MANCHESTER OPERATOR LLC's duties and the applicable standard of care owed by a skilled nursing facilities operator or manager to the Facility's residents.

132. As a direct and proximate result of the individual and collective acts of negligence of the Subsidiary -- and JACQUES WOLF -- Resident was harmed and suffered non-economic damages including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life, death, and other damages.

133. As a direct and proximate result of the individual and collective acts of negligence of the Subsidiary, -- and JACQUES WOLF -- Plaintiff, suffered damages including loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement, conscious pain and suffering; and mental anguish.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable including non-economic damages and past medical expenses.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

STEELE LAW FIRM II, LLC

*/s/ Jonathan Steele*
Jonathan Steele
MO#63266/KS#24852/OK# #35997
Email: jonathan@nursinghomeabuselaw.com
Direct: (913) 356-9630
Office: (816) 466-5947
Fax: (913) 416-9425
nursinghomeabuselaw.com

Missouri Office
2029 Wyandotte, Suite 100
Kansas City, MO 64108

Oklahoma Office
15401 N. May Ave., Suite 1100
Edmond, OK 73013

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that the below-signed Attorney signed the original of the above and foregoing and is maintaining the original copy at said Attorney's office, and that on December 15, 2025 a copy of the above and foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all parties and attorneys of record.

*/s/ Jonathan Steele*
Attorney for Plaintiff(s)